UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MARYANNE GODBOLDO,<br>AG-H, a Minor by her Next Friend,<br>MARYANNE GODBOLDO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF WAYNE,<br>WAYNE COUNTY CIRCUIT COURT<br>A/K/A MICHIGAN'S THIRD JUDICIAL<br>CIRCUIT COURT, governmental entities,<br>MIA WENK, LESLIE KIM SMITH,<br>MARSHA HERST, VIKKI KAPANOWSKI,<br>in their individual and official capacities,<br><br>　　　　Defendants. | Case No. 14-11065<br>Honorable Laurie J. Michelson<br>Magistrate Judge Michael J. Hluchaniuk |

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MIA WENK'S MOTION TO DISMISS [16] AND GRANTING MARSHA HERST, VIKKI KAPANOWSKI, LESLIE KIM SMITH, AND WAYNE COUNTY CIRCUIT COURT'S MOTION TO DISMISS [17]

Plaintiffs Maryanne Godboldo and her minor daughter, "AG-H," bring this suit for money damages pursuant to 42 U.S.C. § 1983 and Michigan state law. The case arises from a 2011 incident in which AG-H was removed from Godboldo's custody after Godboldo discontinued the administration of prescription anti-psychotic medication. Godboldo alleges that Defendant Mia Wenk, a Wayne County social worker, presented a deficient petition for protective custody to Defendant Marsha Herst, a probation officer, who reviewed the petition and stamped the signature of Defendant Judge Leslie Kim Smith. Defendant Wayne County Circuit Court's alleged practice of "rubber-stamping" child custody orders without review by the presiding judge set off a chain of events wherein police officers arrived at the Godboldo

residence and removed AG-H after a standoff. AG-H was delivered to non-party the Hawthorne Center, where she allegedly suffered abuse before being returned to her parents eight months later.

Based on these events, Plaintiffs assert five counts. First, they allege that Judge Smith and Wayne County Circuit Court "authorized and tolerated an institutional practice which allowed CPS workers to obtain orders for custody of minor children that circumvented a judge's review for the legal sufficiency for the order" in violation of "due process." (Compl. at ¶¶ 36–38.) Second, they allege that Judge Smith, Herst, and Herst's supervisor, Vikki Kapanowski (collectively, the "Court Defendants"), violated the Fourth and Fourteenth Amendments by tolerating the practice alleged in Count I. (Compl. at ¶¶ 39–41.) Third, they allege that Wenk deprived them of rights under the Fourth and Fourteenth Amendments. (Compl. at ¶¶ 42–44.) Fourth, they allege that all Defendants deprived them of unspecified statutory and constitutional rights under Michigan state law. Fifth, they assert a claim of intentional infliction of emotional distress against Wenk.

Now before the Court are motions to dismiss "and/or" for summary judgment by Wenk (Dkt. 16) and the Court Defendants (Dkt. 17). The Court will treat these pre-discovery motions as motions to dismiss, as many of the exhibits are not public records and are not referenced in the Complaint, and Godboldo's former counsel averred that he did not have access to them. Smith, Herst, and Kapanowski are entitled to absolute immunity on all claims, and the Wayne County Circuit Court is not a proper defendant to a § 1983 claim. However, at this stage of the case, Mia Wenk is entitled to absolute immunity only for her actions in filing the petition with the family court and her other arguments do not completely dispose of the claims against her. Therefore, the

Court will GRANT the Court Defendants' motion and will GRANT IN PART AND DENY IN PART Wenk's motion.

## I.  LEGAL STANDARD

To withstand a motion to dismiss, Plaintiff's Complaint "must allege 'enough facts to state a claim of relief that is plausible on its face.'" *Traverse Bay Area Int. Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means that "the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The court must "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennet v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010).

In addition to the Complaint, the Court may consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). However, "if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to

such a motion by Rule 56." *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986) (quoting Fed. R. Civ. P. 12(b)).

## II. ALLEGATIONS OF THE COMPLAINT

In late 2009, Plaintiff Maryanne Godboldo began to notice behavioral changes in her then-eleven-year-old daughter, Plaintiff "AG-H." (Compl. ¶ 12.) Concerned, Godboldo sought treatment for AG-H at the New Oakland Child, Adolescent and Family Center and Children's Center ("the Center"). (*Id.* at ¶¶ 13–15.) Physicians there prescribed Risperdol, an anti-psychotic medication, and informed Godboldo that "she could withdraw her consent for the administration of the drug at any time." (*Id.* at ¶ 15.)

Soon after AG-H began taking Risperdol, Godboldo noticed side effects, including AG-H's thirty-two pound weight gain, "extreme behavioral changes," and agitation. (*Id.* at ¶ 16.) Godboldo complained to the Center and informed the staff that she was withdrawing her consent for the administration of the drug. (*Id.* at ¶ 16, 17.) Shortly thereafter, Godboldo began a "weaning process" to avoid any effects of abruptly stopping the administration of the drug. (*Id.*) In the meantime, the Center reported Godboldo's decision to stop the drug to Child Protective Services ("CPS"). (*Id.* at ¶ 18.)

CPS assigned the case to Mia Wenk. (*Id.* at ¶ 19.) Wenk sought a Permanent Placement Conference ("PPC"). (*Id.* at ¶ 18.) The conference was held on March 23, 2011. (*Id.* at ¶ 21.) Godboldo did not attend. (*See* Dkt. 22-1, Pet.) The next day, on March 24, 2011, Wenk prepared a Petition to Take Child into Protective Custody regarding AG-H and presented it to Defendant Marsha Herst, a probation officer in the Wayne County Circuit Court. (*Id.* at ¶ 21.) Plaintiffs allege that Herst "used Judge Smith's stamp to authorize" an "Order to Take Child into

4

Protective Custody" without any review by Judge Smith herself. (*Id.*) This was a common practice at the court. (*Id.*)

Wenk attached the Petition to her Motion to Dismiss. (Pet.) The Order bears the signature of "Leslie Kim Smith." (*Id.* at 2.) It provides as follows:

> Maryanne Godboldo has numerous CPS referrals in the last year regarding medical neglect of her daughter, [AG-H]. [AG-H] is diagnosed with Psychosis NOS and is prescribed Risperdol, but the mother refuses to give the medication to her daughter. Mother is in denial about her daughter's mental health issue and believes that her daughter is delusional, severely psychotic, and completely out of touch from reality due to the immunization the child received in 2009. . . . PPC was held on 3/23/11 at SCCFS. Maryanne Godboldo was notified on 3/21/11 of the PPC but did not show.

(*Id.*) The Court Defendants say that the alleged "rubber-stamping" procedure was explicitly authorized by Michigan statute, the Michigan Court Rules, and the Wayne County Circuit Court at the time the incident occurred. *See* Mich. Comp. Laws § 712A.10 (2011); Mich. Ct. R. 3.963 (2011).

After the order was stamped, Wenk arrived at Godboldo's home with several Detroit police officers. (Compl. at ¶ 22.) Godboldo refused to allow the officers to enter. (*Id.* at ¶ 25.) Following a standoff, the officers forcefully entered the home and Wenk retrieved AG-H. (*Id.* at ¶ 27.) Godboldo was arrested (and remained in custody for four days) and AG-H was transported to the Hawthorne Center. (*Id.* at ¶¶ 31–32.) The Complaint alleges that while at the Hawthorne Center, AG-H "was assaulted and battered and administered unconsented to psychotropic and other medication and deprived of her prosthetic leg in order to restrict her mobility as a punishment." (*Id.* at ¶ 32.) AG-H was returned to her parents on December 12, 2011. (*Id.* at ¶ 35.)

The Defendants refer to other events that are relevant to the child custody proceedings in their Motions to Dismiss, but these events and the documentation thereof are not part of the

Complaint. On April 6, 2011, Family Court Referee Leslie Graves signed a "Petition Child Protective Proceedings" for temporary court wardship for AG-H. The Court Defendants attached the Petition to the Complaint. (Dkt. 17-2, Order.) Judge Lynne Pierce reviewed the final Petition and affirmed its findings. (Dkt. 17-7.) Godboldo unsuccessfully challenged this decision before both Judge Pierce and the Michigan Court of Appeals. (Dkts. 17-11; *In re Godboldo-Hakim*, Nos. 305858; 308404, 2012 WL 2914260 (Mich. App. July 17, 2012).

Plaintiffs filed suit in this Court on March 12, 2014. (Dkt. 1.) Plaintiffs assert five claims: a due process violation through section 1983 against Judge Smith, Wayne County Circuit Court, and Wayne County (Count I); violations of the Fourth and Fourteenth Amendments through § 1983 against Judge Smith, Herst, and Kapanowski (Count II); violations of the Fourth and Fourteenth Amendments through § 1983 against Wenk (Count III); "Liability under State Law" against Wenk, Herst, and Kapanowski (Count IV); and an Intentional Infliction of Emotional Distress claim against Wenk (Count V). Wayne County was dismissed as a Defendant by stipulated order. (Dkt. 18.)

On May 19, 2014, Mia Wenk filed a Motion to Dismiss. (Dkt. 16.) Shortly thereafter, the Court Defendants filed a Motion to Dismiss. (Dkt. 17.) The motions are fully briefed. But before the Court could hear argument, Godboldo's attorneys filed a Motion to Withdraw (Dkt. 27), which the Court granted (Dkt. 32). After granting Godboldo's request for an extension of time to find a new attorney (Dkt. 34) and having been advised that Godboldo had obtained new counsel (Dkts. 45, 46), the Court heard argument on the pending motions on May 11, 2015. Because Wenk has filed a notice of concurrence with the Court Defendants' motion (Dkt. 19), the Court will first address the issues common to the two motions and then move to the Defendants' individual arguments.

## III. THRESHOLD MATTERS

Both Defendants filed motions to dismiss "and/or" for summary judgment. So the Court first addresses whether summary judgment is appropriate at this stage in the case. The Court then addresses Defendants' threshold arguments for dismissal: *Rooker/Feldman*, collateral estoppel, and absolute immunity. Neither *Rooker/Feldman* nor collateral estoppel warrants dismissing this case. However, Judge Smith, Herst, and Kapanowski are entitled to absolute immunity from suit, so the claims against them will be dismissed. And Wenk is entitled to absolute immunity for some, but not all, of the actions alleged in the Complaint.

### A. Propriety of Summary Judgment

Although no scheduling order has been entered and no discovery taken, both motions are styled as motions to dismiss "and/or" for summary judgment. Attached to Defendants' motions are numerous exhibits related to the child custody proceedings, many of which are not referred to in the Complaint and are not public records. For this reason, Godboldo argues in both of her response briefs that summary judgment is premature and the Court agrees.

"[S]ummary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) (quoting *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996)). However, the "non-movant bears the obligation to inform the district court of its need for discovery . . . If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment without permitting him to conduct any discovery at all will constitute an abuse of discretion." *Abercrombie*, 280 F.3d at 627. Federal Rule of Civil Procedure 56(d) provides that upon such a showing, the court may "defer considering the motion

or deny it," "allow time to obtain affidavits or declarations or to take discovery," or "issue any other appropriate order."

Godboldo's former attorney averred in a Rule 56 affidavit that he did not otherwise have access to the transcripts, files and other documents from the custody proceedings and would be unable to respond to the pending motions without discovery as to Wenk's administrative and investigative actions and Wayne County's administrative procedures. (Dkt. 21-2, Robinson Aff., at ¶ 2–3; Dkt. 24-3, Robinson Aff., at ¶ 2–3.) *Cf. Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003) (holding that it was error for the court to deny summary judgment as premature where the plaintiff did not file a Rule 56(f) affidavit.) This is especially persuasive given that Wenk did not file her exhibits until after Godboldo responded to Wenk's motion.[1] (*See* Dkt. 22.)

Accordingly, to the extent that these exhibits would convert the filings from Motions to Dismiss to Motions for Summary Judgment, they will not be considered.

## B. *Rooker-Feldman*

The Defendants contend that the Court lacks subject-matter jurisdiction over Plaintiffs' claims because the claims ask a federal district court to review a state-court judgment (namely, the protective order and the orders affirming it). (Ct. Def.'s Mot. at 18–20); *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Plaintiffs respond that the "source of injury" alleged in their Complaint is not the orders themselves, but rather "Defendants' practice of allowing removal of children from their homes without judicial review by use of a judge's stamp by non-judicial officers." (Pl.'s Resp. to Ct. Defs. at 17.) The Court agrees.

---

[1] The Court entered a stipulated order granting Godboldo an extension of time to file an amended response given the late filing of exhibits. (Dkt. 23.) Ultimately, Godboldo did not file an amended response.

The *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject-matter jurisdiction where the plaintiff lost in state court and then complains of an injury caused by the state-court judgment and seeks review of that judgment." *Get Back Up, Inc. v. City of Detroit*, 878 F. Supp. 2d 794, 802 (E.D. Mich. 2012). The doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Since *Exxon*, the Sixth Circuit has instructed that the relevant inquiry is the "source of the injury" as alleged by the plaintiff:

> If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

Here, the source of injury alleged is not the state-court orders themselves, but rather, the Court Defendants' practice of "rubber stamping" protective orders without review by a judge and Wenk's actions in allegedly taking advantage of this practice to remove AG-H without proper review of her petition. *See Ratte v. Corrigan*, 989 F. Supp. 2d 550, 558–59 (E.D. Mich. 2013) ("Plaintiffs are not challenging the form order or asking the Court to review it in any way. The "source of injury" alleged in plaintiffs' first amended complaint is Hartsfield's practice of allowing removal of children from their homes without judicial review by providing what is in effect a pre-signed form order to non judicial officers."). Indeed, the challenge is to the procedures for taking away AG-H rather than Judge Pierce's judgment affirming the removal. And the Michigan Court of Appeals explicitly declined to consider "procedural defects in the order to remove the child," finding they were "moot for purposes of this appeal, given that the

9

circuit court has terminated its jurisdiction over the child." *In re Godboldo-Hakim*, 2012 WL 2914260, at *2. Accordingly, Plaintiffs are not "asking this court to evaluate the merits of the state court's decisions" as the plaintiff in *Raddatz v. Beaubien*, 880 F.Supp. 500, 503 (E.D. Mich. 1995), was. (*See* Court Def.'s Mot. at 18–19 (citing *Raddatz*).) Accordingly, *Rooker-Feldman* does not bar this Court from considering Plaintiffs' claims.

### C. Collateral Estoppel

Defendants next argue that Plaintiffs are collaterally estopped from bringing their claims because they raised the same issues before Judge Pierce. "Under Michigan law, [collateral estoppel] applies when (1) there is identity of parties across the proceedings, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated and necessarily determined in the first proceeding, and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Molnar v. Care House*, 359 F. App'x 623, 626 (6th Cir. 2009) (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001)). "Because issue preclusion forever precludes litigation with respect to a covered finding, courts err on the side of construing prior ambiguous findings or holdings narrowly." *United States v. United Technologies Corp.*, 782 F.3d 718, 729 (6th Cir. 2015) (citations omitted).

The Court declines to apply the doctrine of collateral estoppel for several reasons. First, the records that Defendants rely on for this argument are outside the pleadings. Second, even if the Court were to consider those records, it is unclear whether Plaintiffs "actually litigated" the same arguments raised here. Again, in this lawsuit, Plaintiffs dispute the "rubber stamping" practices of the Wayne County Circuit Court and Wenk's alleged misuse of those procedures. Yet the entirety of Judge Pierce's due process analysis reads:

> In this case, due process has been satisfied. The parents were provided with notice of the charges against them by way of the filing and serving of the petition. They are both represented by counsel and have been since the initial probable cause hearing. The allegations in the petition will be proven or disproved at a full hearing by a neutral fact finder, i.e. a jury.

(Dkt. 17-11.) And the Michigan Court of Appeals explicitly declined to decide Godboldo's constitutional challenges, finding them "moot." *In re Godboldo-Hakim*, 2012 WL 2914260, at *2. It is unclear to the Court whether the Michigan courts "necessarily determined" Godboldo's claims that the delegation of authority to probation officers to review child custody petitions violated her due process rights. Therefore, collateral estoppel is inappropriate. *See Ditmore v. Michalik*, 625 N.W.2d 462, 467 (2001) ("Collateral estoppel applies only when the basis of the prior judgment can be clearly, definitely, and unequivocally ascertained.").

### D.  Claims against Wayne County Circuit Court

Defendants first assert that Wayne County Circuit Court is not a "person" under section 1983 and therefore is not a proper defendant to the claims asserted against it in Counts I and II. The Court agrees. To state a claim under section 1983, Plaintiffs must show "1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law." *Harris v. City of Circleville*, 583 F.3d 356, 364 (6th Cir. 2009). The Sixth Circuit "has held that a state court is not a 'person' within the meaning of that term as used in § 1983[.]" *Mumford v. Zieba*, 4 F.3d 429, 435 (6th Cir. 1993) (citing *Foster v. Wals*h, 864 F.2d 416, 418 (6th Cir. 1988)). Therefore, the claims against Wayne County Circuit Court must be dismissed. *Id.*

### E.  Absolute Immunities

All of the individual Defendants assert some form of absolute immunity from suit. "It is well established that judges and other court officers enjoy absolute immunity from suit on claims

11

arising out of the performance of judicial or quasi-judicial functions. It is equally clear that judges and other court officers are not absolutely immune from suits based on performance of non-judicial functions." *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir.1988). Moreover, the Sixth Circuit has extended absolute immunity to social workers in certain circumstances. *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000).

### 1.  Judicial Immunity: Judge Smith

"[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). "[J]udicial immunity is immunity not just from the ultimate assessment of damages but is immunity from suit itself." *King v. McCree*, 573 F. App'x 430, 438 (6th Cir. 2014) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). "Because immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches, judicial immunity has its limits, in the form of two exceptions." *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001) (citation omitted). "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12 (citation omitted). "[A]s the party claiming judicial immunity, [Judge Smith] bears the burden of establishing that judicial immunity is proper." *See King*, 573 F. App'x at 437.

Judge Smith is a family court judge and clearly had jurisdiction over child custody proceedings. As to the judicial-capacity exception, "the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Mireles*, 502 U.S. at 13. It is "the nature of the function performed, not the identity of the actor who performed it," that informs the analysis. *Forrester v.*

*White*, 484 U.S. 219, 229 (1988). Absolute judicial immunity is thus limited "to those acts which are truly judicial acts and are not simply administrative acts." *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989).

Here, Plaintiffs allege that Judge Smith "authorized non-legal personnel to use her stamp to issue protective orders without judicial hearings and in violation of Michigan law and due process." (Compl. at ¶ 3.) Thus, the "function" at issue is issuing protective orders for child custody. This is clearly a judicial function—Judge Smith is a family court judge, and issuance of protective orders in custody proceedings is part of her duties as a judge.

That Judge Smith delegated her authority to review the petitions to the probation department does not deprive her of immunity. Indeed, Michigan law allowed her to do so. *See* Mich. Comp. Laws § 712A.10 (2011); Mich. Ct. R. 3.963 (2011). "[I]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Mireles*, 502 U.S. at 12–13 (citations and internal marks omitted). Thus, in *Mireles*, where a judge ordered police officers to bring an attorney before him in court and the police officers were alleged to have used excessive force in carrying out that order, "the fact that Judge Mireles' order was carried out by police officers" did not "somehow transform his action from 'judicial' to 'executive' in character." *Id.*

This explains why *Ratte v. Corrigan*, 989 F. Supp. 2d 550 (E.D. Mich. 2013), is distinguishable. In *Ratte*, the plaintiffs alleged that a family court judge had created "numerous . . . blank" pre-signed protective orders to be used during off-hours. *Id.* at 559–60.

Moreover, the judge had put into place "a process and procedure whereby the individual on duty at the Juvenile Court was *mandated* to fill-in partially completed, pre-signed orders of removal upon the filing of a complaint by the police and to issue such orders as valid court orders to place minors in the custody of DHS." *Id.* (emphasis added). Thus, there was no delegation of authority and no review whatsoever of orders issued during non-business hours. But here, Plaintiffs do not allege that there was no delegation of authority and no review of the protection order—their issue is that review was delegated to a probation officer. Yet, as stated above, this delegation does not strip Judge Smith of judicial immunity.

Accordingly, the Court finds that Judge Smith is entitled to judicial immunity for her actions as alleged in the Complaint. The claims against her will be dismissed.

### 2.   Quasi-Judicial Immunity: Herst and Kapanowski

Defendants Herst and Kapanowski argue that they are entitled to quasi-judicial immunity because they acted pursuant to Judge Smith's delegation of authority.

"Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994). The Sixth Circuit has held that "an official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'" *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000) (quoting *Bush*, 38 F.3d at 847 (6th Cir.1994)). This is because "officials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function." *Bush*, 38 F.3d at 847.

14

Here, Plaintiffs allege that Herst reviewed the Petition and stamped Judge Smith's signature pursuant to a "policy, pattern and custom attributable to Judge Smith . . . ." (Compl. at ¶ 21.) The only reasonable inference from the allegations of the Complaint is that Herst and Kapanowski acted under a general order from Judge Smith enabling probation officers to stamp her signature on child custody petitions during off-hours. Because they were acting pursuant to a judicial order, Herst and Kapanowski are entitled to quasi-judicial immunity. The fact that Herst and Kapanowski acted pursuant to a general order, rather than an order tied to a specific case, is not dispositive. *See Shelton v. Wallace*, 886 F. Supp. 1365, 1372 (S.D. Ohio 1995) ("[A] nonjudicial officer who is delegated judicial duties in aid of the court should not be a lightning rod for harassing litigation aimed at the court.").

Accordingly, the Court finds that Herst and Kapanowski are entitled to quasi-judicial immunity for the acts alleged in the Complaint. The claims against them will be dismissed.

### 3. Social Worker Immunity: Wenk

Wenk argues that her actions in investigating, petitioning for removal, and removing AG-H are protected by social worker immunity. The Sixth Circuit has extended absolute and qualified immunity to social workers.

In limited circumstances, social workers are "entitled to absolute immunity." *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000). "The scope of this immunity is akin to the scope of absolute prosecutorial immunity, which applies to conduct 'intimately associated with the judicial phase of the criminal process.'" *Pittman v. Cuyahoga Dep't of Children and Family Servs.*, 640 F.3d 716, 724 (6th Cir. 2011) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Accordingly, "social workers are absolutely immune only when they are acting in their capacity

15

as legal advocates—initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions." *Holloway*, 220 F.3d at 774.

As "[q]ualified immunity represents the norm," to be entitled to absolute immunity, Wenk must demonstrate that "the actions of which [Plaintiffs] complain were taken by [Wenk] *in her capacity as a legal advocate*." *Id.* (emphasis in original). "To determine whether absolute immunity applies, the court must precisely identify the wrongful acts alleged and classify them according to their function." *Young v. Vega*, 574 F. App'x 684, 689 (6th Cir. 2014). The wrongful actions Godboldo attributes to Wenk are as follows:

> With no more information than a deficient report that Godbodo had "abruptly" taken A.G-H. off the dangerous drug, Wenk sought a Permanent Placement Conference (PPC) where a decision was made to petition the court for removal of the Minor. (Compl. ¶ 20.)
>
> The PPC was held on March 23, 2011. WENK abruptly typed up an Order To Take Childr(ren) into Protective Custody and on March 24, 2011 presented it to Defendant Marsha Herst . . . .
>
> Armed with this defective Order leaving the Lincoln Hall of Justice WENK dialed 911 reporting to the Detroit Police that she had a "warrant" and needed police assistance to make a confiscation of the Minor.
>
> Parked some distance from the Godboldo home, WENK waited for the police to arrive. Upon their arrival WENK made allegations that the Order directed the Defendant officers to take the Minor into custody.

(Compl. at ¶¶ 21, 22, 33.)

As to the PPC, it appears that this function is not part of Wenk's duties as a legal advocate, but rather, part of her investigation of AG-H. This is especially so where the PPC led to the decision to petition for AG-H's removal—that is to say, the PPC occurred *before* Wenk took action in her capacity as an advocate. In *Achterhof v. Selvaggio*, 886 F.2d 826, 830 (6th Cir. 1989), the Sixth Circuit addressed the issue of "what level of immunity applies to social workers

who simply begin an investigation of alleged child abuse." The Court held that absolute immunity did not apply:

> Despite the possibility that criminal prosecution might have resulted from [the social worker's] investigation, his decision to 'open a case' was not entitled to absolute immunity. This decision was only investigatory or administrative in nature, not prosecutorial, judicial or otherwise intimately related to the judicial process. Indeed, it was investigatory work of the most ordinary kind since it was mandated by the statute.

*Id.* (citing Mich. Comp. Laws Ann. § 722.628). So too here. In fact, it appears that Wenk initiated the investigation and PPC pursuant to the same statutory section cited in *Achterhof*, having received a report from a "mandated reporter" (the Center). *See* Mich. Comp. Laws Ann. § 722.628(1) ("Within 24 hours after receiving a report made under this act, the department shall refer the report to the prosecuting attorney and the local law enforcement agency if the report meets the requirements of subsection (3)(a), (b), or (c) or section 3(6) or (9)1 or *shall commence an investigation of the child suspected of being abused or neglected*." (emphasis added)). Accordingly, the Court finds that Wenk is not entitled to absolute immunity for her actions in initiating the PPC.

As to the presentation of the Order to the court and obtaining the Petition, the Sixth Circuit has held that "family service workers [are] absolutely immune from liability in filing [a] juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings." *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989). This is so even if the social worker made intentional misrepresentations because the Sixth Circuit follows the "functional approach towards prosecutorial immunity" in which "prosecutors do not forfeit their absolute immunity when they knowingly make false statements while advocating before the court . . . ." *Pittman*, 640 F.3d at 725. "Because absolute immunity for social workers is akin to absolute immunity for prosecutors, the same protection must apply here, no matter how undesirable the

17

results." *Id.* Wenk's conduct in presenting these materials and her sworn statements contained therein are entitled to absolute immunity.

As to the request for Detroit Police to retrieve AG-H from the home and the instructions to the police officers to take AG-H into custody, the Court finds that these functions are not related to the "judicial phase of the criminal process." Once a protective order issues, the social worker's role as an advocate has been accomplished and all that is left is to execute the order. The Court finds that Wenk is not entitled to absolute immunity for this function.

Accordingly, claims stemming from Wenk's presentation of the order will be dismissed. The Court will evaluate whether Wenk is entitled to qualified immunity as to the rest of the acts alleged in the Complaint.

## IV. SUBSTANTIVE ARGUMENTS

Remaining for a merits determination are Plaintiffs' Fourth and Fourteenth Amendment claims against Wenk (aside from her submitting the petition to the family court) (Count III), state law violation claims against Wenk (Count IV), and intentional infliction of emotional distress claim against Wenk (Count V).

### A. Count III: Section 1983 Claim against Wenk

If absolute immunity does not apply, a social worker may still be entitled to qualified immunity. Qualified immunity shields government officials from liability under section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court asks "(1) whether the plaintiff has shown a violation of a constitutionally protected right; and, if so, (2) whether that right was clearly established such that a reasonable official would have understood that his behavior violated that right." *Shehee v. Luttrell*, 199 F.3d 295,

299-300 (6th Cir. 1999). The Court can consider the questions in any order in its discretion. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 1. Due Process

As to Godboldo's due process claim, Wenk argues that *Pittman v. Cuyahoga County Department of Children and Family Services*, 640 F.3d 716 (6th Cir. 2011) is controlling. In *Pittman*, the father of a minor placed in state custody sued social services and social worker Cynthia Hurry, claiming that Hurry had misrepresented his relationship with the child, willingness to become a custodial parent, and cooperation during the proceedings, resulting in the child's placement with her great aunt. He raised both procedural and substantive due process claims, anchored by his "fundamental liberty interest in family integrity." *Id*. at 727. The Court assumed, without deciding, that Pittman had a fundamental right to maintain his parent-child relationship with the child and that he had alleged a deprivation of that right so as to trigger the substantive and procedural protections of the Due Process Clause. *Id*. However, the Court found that "because Hurry's conduct neither caused [the] deprivation nor interfered with the process due upon that deprivation, Pittman cannot show that she violated his constitutional rights." *Id*. at 728. It is unclear from the briefing whether Plaintiffs assert violations of procedural or substantive due process, or both. So the Court will assume that Plaintiffs are asserting both procedural and substantive due process claims.

In *Pittman*, the Court held that the proper analysis for the father's substantive due process claim was that used for "deprivation[s] of a particular constitutional guarantee" rather than the "shock[s] the conscience" standard. *Id*. at 728. The Court found that social worker Hurry was not liable under this standard: "to the extent that Pittman suffered a deprivation of his fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not by Hurry." *Id.*

19

at 729. The Court explained that under Ohio law, while the caseworker "makes the initial determination as to the appropriate placement," the ultimate decision is left to the juvenile courts and the case worker's determination is not binding. *Id.* Therefore, the juvenile court "alone could deprive Pittman of his fundamental right." *Id.* So the Court granted Hurry qualified immunity as to the substantive due process claim.

The Court finds that *Pittman* controls here. While *Pittman* involved Ohio law, Michigan courts similarly have the ultimate decision-making authority on custody matters. *See Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586 (6th Cir. 2013) (applying *Pittman* to a Michigan family's claims against social workers because "Michigan courts also have the ultimate decision-making power on custody and guardian appointment for developmentally disabled persons . . . ."). Specifically, the court has the final authority to issue an ex parte order for immediate protective custody, Michigan Compiled Laws § 712A.14b, order placement of a juvenile outside of her home, Michigan Compiled Laws § 712A.13a(8), and "order the juvenile placed in the most family-like setting available consistent with the juvenile's needs," Michigan Compiled Laws § 712A.13a(12). Moreover, review of custody orders rests with the state court. Michigan Compiled Laws § 712A.13a(14). Accordingly the Court finds that Plaintiff has failed to plead a plausible claim against Wenk for a substantive due process violation (to the extent one occurred) because the final custody determination rested with the state court. *See Van Buren v. Crawford Cnty.*, No. 13-14565, 2014 WL 2217016, at *8 (E.D. Mich. May 29, 2014) (applying *Pittman* and *Kolley* and holding that "As in Ohio, only a Michigan juvenile court can violate a plaintiff's substantive due process rights by interfering with the fundamental right to family integrity."); *Lebeau v. Michigan Dep't of Human Servs.*, No. 10-12624, 2011 WL 4962386, at *8 (E.D. Mich. Oct. 19, 2011) (citing Michigan law and holding, "Only the trial court could deprive

Plaintiff of the right to parent his daughter. A social worker lacking this authority cannot be said to have deprived a parent of the right to raise his child.").

As to procedural due process, a plaintiff must show "(1) that he was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law." *Pittman*, 640 F.3d at 729 (citation and internal brackets removed). Pittman argued that Hurry's conduct denied him the requisite process because she "mishandled his caregiver approval process by improperly discontinuing it without notice to him and based on her false assessment of his uncooperativeness." *Id.* at 730. This was not enough: "Ohio law allows a parent to contest [social services'] placement of a child at the dispositional hearing, and permits any party at any time to propose a change to a substantive part of the case plan, including the child's placement." *Id.* (internal markings omitted). Moreover, "it is the juvenile court's responsibility to ensure that [a parent] receive[s] adequate notice of the custody proceedings [and] Hurry had no independent duty to inform Pittman about developments in the . . . proceedings . . . and she is not liable for any defects in the juvenile court's notice to Pittman." *Id.* (citations omitted). Similarly here, "it is the Michigan courts' duty to notify the appropriate parties to a custody hearing." Mich. Compiled Laws § 330.1614(3); *see also Lebeau*, 2011 WL 4962386, at *8.

Accordingly, the Court finds that Plaintiffs have not stated a claim for either a substantive or procedural due process violation by Wenk.

## 2. Unreasonable Search and Seizure

As to Plaintiffs' Fourth Amendment claim in Count III, Wenk argues that this claim "could only be predicated on Wenk's taking of AGH's person into protective custody. But that claim fails because there was a facially valid court order that placed AGH in the custody of

DHS" and "Wenk had no reason to believe that the Order was anything but valid and enforceable." (Wenk Mot. at 3, 5.) Because Wenk's argument relies on exhibits that are beyond the scope of the Complaint, it is not a proper basis for dismissal.

The Sixth Circuit has held that Fourth Amendment protections apply to the seizure of children by social workers:

> Given the presumption that state actors are governed by the Fourth Amendment and the sanctity of the home under the Fourth Amendment . . . a social worker, like other state officers, is governed by the Fourth Amendment's warrant requirement. This would simply mean that social workers would have to obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes. Alternatively, social workers, like police officers, are entitled to rely upon information they receive from other officers, and are insulate[d] . . . from civil liability in the event the information relied upon [is] defective.

*Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 859–60 (6th Cir. 2012) (citation and internal quotation marks omitted); *see also Brent v. Wenk*, 555 F. App'x 519, 525 (6th Cir. 2014) ("[T]his court has held that the clearly established law in this circuit determined as early as 2002 that the Fourth Amendment applies to the seizure of children by social workers."). And another circuit has held that "[i]n the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers have reason to believe that life or limb is in immediate jeopardy." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011) (citation omitted).

In *Stephens v. Hamilton County Jobs & Family Services*, 46 F. Supp. 3d 754, 762 (S.D. Ohio 2014), the plaintiffs alleged that the defendant social worker "provided false information to the magistrate in order to" obtain a child custody order. Specifically, the social worker was assigned to the children of parents who were arrested on domestic violence charges. *Id.* at 757.

The parents had advised the social worker that relatives were available to care for the children, but instead of investigating the relatives, the social worker "told the magistrate that there were no relatives who could watch the children [and] also falsely reported the expected length of time that the parents would be detained, and falsely advised the magistrate that an emergency situation existed, even though the children were perfectly safe." *Id.* at 763. The court first held that the social worker was not entitled to absolute immunity for knowingly false statements made in the course of securing a court order. *Id.* at 761; *see also Young v. Vega*, 574 F. App'x 684, 689 (6th Cir. 2014 ("Absolute immunity will not bar Young's claims to the extent he has limited the wrongful acts complained of to Vega's swearing to the truth of the facts that provided the evidentiary basis for the juvenile court's probable cause determination."). Noting that "the Sixth Circuit has explained that "an investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest," the court denied the social worker's motion to dismiss. *Id.* (citing *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003)).

In *Heartland Academy Community Church v. Waddle*, 317 F.Supp.2d 984 (E.D. Mo. 2004), a private boarding school sued several social workers after the removal of its students, both with and without orders for protective custody. As to those students taken pursuant to court orders, one social worker defendant argued that "the seizures were reasonable and he [could not] be found liable under the Fourth Amendment because he was merely executing court orders." *Id.* at 1091. The court rejected this argument:

> the evidence shows that Mr. Waddle did more than just execute court orders when he removed the children on October 30, 2001. Instead, Mr. Waddle actually petitioned the Court for the removal of the children and created the orders for the Juvenile Judge to sign authorizing the removal. . . . Furthermore, Plaintiffs allege in this case that Mr. Waddle procured the orders through misrepresentations and material omissions[.]

23

*Id.* at 1093. For these reasons, the court held that Waddle was not entitled to absolute immunity, and even further, that he had violated the Fourth Amendment. *Id.*

Here, like in *Stephens* and *Heartland*, Plaintiffs' claim is based on an unreasonable seizure, rather than a warrantless entry or search. And it is undisputed that Wenk took AG-H into custody pursuant to a petition issued by the Wayne County Circuit Court. However, Plaintiffs say that Wenk took advantage of the deficient review process in place at the Wayne County Circuit Court by presenting a facially invalid petition, knowing that it would not be subject to review by a judge. Indeed, a fair reading of the Complaint is that Wenk knew that there was no probable cause to take AG-H into custody. (*See* Compl. at ¶ 20 ("With no more information than a deficient report that Godboldo had 'abruptly' taken AG-H off the dangerous drug, Wenk sought a [PPC] where a decision was made to petition the court for removal of the minor.").)

But unlike in *Stephens* and *Heartland*, the Complaint does not allege that Wenk made material misrepresentations to procure the order. Rather, Plaintiffs allege that Wenk ordered removal based solely on the report that Godboldo had discontinued the administration of Risperdol. And it is not disputed that Godboldo did in fact discontinue the administration of Risperdol. Unfortunately, neither side has briefed the question of whether a single report of the discontinuation of prescribed medication is enough to establish probable cause to remove a minor child from a home and into state custody. Wenk's briefing implies that no matter the answer, the good faith exception set forth in *United States v. Leon*, 468 U.S. 897, 922 (1984) applies. The good faith exception

> allows an otherwise deficient warrant to survive Fourth Amendment scrutiny except where: (1) the affidavit contains information that the affiant knows or should have known to be false; (2) the issuing magistrate wholly abandoned his or her judicial role; (3) the affidavit is so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable or where the warrant application was supported by nothing more than a "bare bones" affidavit; or (4)

24

the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.

*United States v. Taylor*, No. 05-20052-BC, 2007 WL 851600, at \*10 (E.D. Mich. Mar. 20, 2007) (citing *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998); *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006)). However, Wenk relies on exhibits that are outside of the pleadings to establish that she "had no reason to believe that the order was anything but valid and enforceable." (Wenk Mot. at 5 (citing "Wenk's sworn testimony during the family court proceedings[.]").) This is a summary judgment argument and the Court will not consider it at this time for the reasons set forth above.

Accordingly, the Court will not dismiss Plaintiffs' Fourth Amendment claim pursuant to section 1983.

### 3. Equal Protection

Wenk argues that Plaintiffs' equal protection claim fails because Plaintiffs do not allege disparate treatment based on their status as members of a protected class. The Court agrees that Plaintiffs have not stated a claim for a violation of the Equal Protection clause.

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 681-82 (6th Cir. 2011).

Moreover, "[i]t is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (citing *Place v. Shepherd*, 446 F.2d 1239 (6th Cir.1971)).

Plaintiffs' equal protection claim is conclusory. They do not allege membership in a suspect class, articulate which actions by Wenk burdened a fundamental right, or allege that they were treated differently from similarly situated individuals. Their response brief does not offer any further explanation. The allegations are therefore insufficient to state a claim for a violation of equal protection under section 1983. *See Trotter v. DeWeerd*, No. 1:12-CV-575, 2012 WL 4794628, at *3 (W.D. Mich. Oct. 9, 2012) ("Plaintiff does not allege that he was treated differently from others who were similarly-situated. Accordingly, she fails to state an equal protection claim.").

Accordingly, Plaintiffs' Count III Equal Protection claim under section 1983 will be dismissed.

## B. Count IV: Violations of State Law

In Count IV, Plaintiffs assert unspecified violations of Michigan state law. In response, Wenk asserts governmental immunity as to any intentional torts claimed by Godboldo. In Michigan, governmental employees are entitled to intentional tort immunity if they can show

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority, (b) the acts were undertaken in good faith, or were not undertaken with malice, and (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cty.*, 760 N.W.2d 217, 228 (Mich. 2008). "The applicability of governmental immunity is a question of law[.]" *Briggs v. Oakland Cnty.*, 742 N.W.2d 136, 137 (2007). And

26

Michigan places the burden of persuasion on the defendant asserting governmental immunity. *Odom*, 760 N.W.2d at 228.

At this stage of the case, Wenk fails on the second element. "To determine the lack of good faith, courts should consider whether there is evidence of 'malicious intent, capricious action or corrupt conduct.' 'Willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference as to whether harm will result as to be the equivalent of a willingness that it does' and may be demonstrated by the conduct of or the failure to act by the defendant." *Wendrow v. Mich. Dep't of Human Servs.*, 534 F. App'x 516, 534 (6th Cir. 2013) (citing *Odom*, 760 N.W.2d at 225). The good faith standard is subjective. *Odom*, 760 N.W.2d at 225.

Wenk argues that because the family court ultimately determined that there was probable cause to remove AG-H from the home, there is no reason to believe that she did not act in good faith. But the probable cause determination alone does not negate all of the allegations of the Complaint. Plaintiffs allege that Wenk recklessly initiated an investigation and caused a traumatic removal of AG-H from her home by Michigan police officers. Moreover, Plaintiffs allege that Wenk knew that the practices of the family court in approving petitions without review by a judge were deficient, yet chose to file the petition after business hours anyway. The Court finds that these allegations, at the motion to dismiss stage, are sufficient to negate Wenk's proffered evidence of good faith. *See Wendrow*, 534 F. App'x at 534 (reversing a grant of governmental intentional tort immunity at the summary-judgment stage where "Plaintiffs proffered evidence from which a reasonable jury could find that [defendants] know, or should have known, that proper . . . protocols were not being used" to interview an autistic child who alleged sexual abuse by her father, resulting in child custody proceedings).

Because Wenk has not met her burden to demonstrate her entitlement to governmental immunity, her motion to dismiss will be denied as to Count IV. However, the Court notes that the legal basis of Plaintiffs' claims in Count IV is unclear: they do not cite any particular theory or state law. Nor does Plaintiffs' response shed any light on the matter.

### C.  Count V: Intentional Infliction of Emotional Distress

In Count V, Plaintiffs assert a claim for intentional infliction of emotional distress against Wenk. "The tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Haverbush v. Powelson*, 551 N.W.2d 206, 209 (Mich. Ct. App. 1996) (citations omitted).

Wenk seeks to dismiss this claim, but instead of raising governmental immunity, she argues that that there was nothing extreme and outrageous about her conduct because she was merely acting pursuant to a "facially valid court order" and that she was not the proximate cause of the injuries alleged in the Complaint. (Wenk Br. at 23.) Plaintiffs do not address Wenk's arguments or even mention Count V in their response brief. (See Pl.'s Wenk Resp. Br. at 16–17.) However, "a district court cannot dismiss a plaintiff's complaint solely because the plaintiff fails to respond to a Rule 12(b)(6) motion to dismiss." *Allstate Ins. Co. v. LG&E Energy, LLC*, 201 F. App'x 311, 315 (6th Cir. 2006) (citing *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir.1991); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006)). So the Court has reviewed the allegations of the Complaint along with Wenk's brief.

28

Wenk interprets the allegations of the Complaint too narrowly. Plaintiffs are not asserting intentional infliction of emotional distress solely based on Wenk's actions in carrying out the Petition. Instead, it appears that Plaintiffs base this claim not only on Wenk's execution of the order (especially the use of police officers to remove the child from the home), but also on Wenk's conduct in initiating the investigation and taking advantage of the practices of the court in allowing probation officer review of custody petitions in order to remove AG-H from the home. Taking these allegations as true, they could give rise to an inference of extreme and outrageous conduct.

For example, in *Walsh v. Erie County Department of Job & Family Services*, 240 F. Supp. 2d 731, 742 (N.D. Ohio 2003), two social workers, in the course of investigating an anonymous complaint of abuse in a home, accessed the home without a search warrant. Based on the warrantless search, which did not result in any further action by social services, the parents sued the social workers and social services. They included a claim of intentional infliction of emotional distress (which contains the same elements under Ohio and Michigan law), and the claim survived summary judgment. Like Wenk, defendants argued that nothing about their conduct was extreme and outrageous. The Court held,

> A reasonable juror, being apprised of the pertinent Fourth Amendment legal doctrines, including the basic sanctity of the home and the right to be free from unjustified intrusion, and, as well, the constitutional protection otherwise given to the family, could view the threats of taking the children away, the arrest, ensuing entry into the home, and the searches of Mr. Walsh and the family home to have been outrageous.

*Id.* at 766.

Nor do the allegations of the Complaint belie a finding of proximate cause given that the court, and not Wenk, issued the order. Again, Plaintiffs do not base their intentional infliction of emotional distress claim on the mere fact of Wenk's execution of the order to take AG-H into

29

custody. Rather, it is based on the totality of Wenk's actions in initiating the investigation, engaging in the alleged deficient process, and utilizing police officers to remove AG-H from the home.

Accordingly, the motion to dismiss the intentional infliction of emotional distress claim will be denied.

## V.   REQUEST FOR LEAVE TO AMEND

Godboldo requests that she be granted leave to amend should the Court grant either Motion to Dismiss. (Pl.'s Wenk Resp. at 19; Pl.'s Ct. Resp. at 23.) In neither request does Godboldo clarify how she would amend her complaint, nor did she attach a proposed amended complaint to either response brief.

Although Federal Rule of Civil Procedure 15 establishes a liberal policy toward granting leave to amend, a "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (quoting *La. Sch. Emps.' Ret. Sys. v. Ernst & Young*, LLP, 622 F.3d 471, 486 (6th Cir. 2010)). The request for leave consists of "throwaway language" that does not serve as a motion to amend within the ambit of Rule 15(a). *See Kuyat*, 747 F.3d at 444.

Generally, plaintiffs are "not entitled to an advisory opinion from the court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699, 91 Fed. Appx. 418 (6th Cir. 2004) (quoting *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000)); *accord Kuyat*, 747 F.3d at 444 (holding that the district court did not abuse its discretion by denying leave to amend where

"plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint . . . .").

If warranted based on the Court's ruling, Godboldo may file a motion for leave to amend in compliance with Eastern District of Michigan Local Rule 15.1 and the request will be considered at that time.

## VI. CONCLUSION

For the reasons set forth above, IT IS ORDERED that Defendant Mia Wenk's Motion to Dismiss (Dkt. 16) is GRANTED IN PART AND DENIED IN PART and Defendants Wayne County Circuit Court, Judge Leslie Kim Smith, Marsha Herst, and Vikki Kapanowski's Motion to Dismiss (Dkt. 17) is GRANTED. It follows that Counts I and II are DISMISSED and Defendants Wayne County Circuit Court, Judge Leslie Kim Smith, Marsha Herst, and Vikki Kapanowski are DISMISSED from the case. Count III will be DISMISSED IN PART.

The remaining claims in this case are Count III, insofar as it states a Fourth Amendment violation under section 1983 against Wenk; Count IV; and Count V.

IT IS SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  October 2, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 2, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson